## No. 3556.

### Q. A. THOMAS *v.* THE CITY OF NEW ORLEANS.

The plaintiff in this case is bound by the modified contract to which he gave his assent, and by his own interpretation of it.

The city is not in default, and consequently not liable in damages.

APPEAL from the Fifth District Court, parish of Orleans. *Cooley,* J. Jury trial. *Hornor & Benedict,* for plaintiff and appellee. *George S. Lacey,* City Attorney, for defendant and appellant.

TALIAFERRO, J. The plaintiff's demand against the city is made up of alleged losses incurred by him in the nature of damages arising, as he avers, from the failure on the part of the defendant to comply, on its part, with a contract entered into with him to furnish a large quantity of shells to be used on the public streets of the city. He avers loss to a large amount in the discount of certain certificates of indebtedness received by him in part payment of portions of the quantity of shells delivered by him, the defendant, as he avers, being bound to make payment in money, which it failed to do. He alleges loss to the amount of $1120 on seven thousand barrels of shells brought to New Orleans in pursuance of his contract with the city, which it refused to take, compelling the plaintiff thereby to sell them at private sale. He claims, besides, $4100 for loss sustained from various sums expended in the purchase of suitable boats in which to transport the shells through Harvey's Canal, and for divers other appliances, which he alleges were necessary for him to obtain in order to enable him to comply with his contract to furnish one hundred and fifty thousand barrels of shells. The boats and the various implements necessary for the works, houses built at the shell banks for the accommodation of his laborers, a large supply of ropes, and many other necessary things in the prosecution of so large an engagement, he alleges, became valueless by the default of the city to comply with its contract; and, in addition, he estimates a large loss in profits he would have realized had he gone on to complete his undertaking, which he alleges he was willing and able to perform.

The case was tried before a jury. A verdict was rendered in the

plaintiff's favor for $14,298 04, with interest at five per cent. from the twelfth June, 1871.

Judgment being entered for that sum, the defendant has appealed.

Proposals were made, in the usual manner, to persons inclined to enter into a contract for furnishing the city with one hundred and fifty thousand barrels of shells, and bids were invited. The plaintiff's bid turned out to be the lowest. By the proposals, it was stated that the city reserved the right to reject any and all bids. On the twenty-sixth of July, 1870, West, Administrator of Improvements, in his report, suggested that Thomas' bid be accepted for fifty thousand barrels of shells, with reservation on the part of the city to accept or reject, within sixty days, the remaining one hundred thousand barrels. The city, through its proper agents, on the twenty-eighth July, accepted the bid in conformity with the Administrator's report. In conformity with this report and acceptance, the contract was entered into on the twenty-ninth of July, by the Mayor and Thomas, by notarial act.

It does not appear that any formal acceptance or rejection of the remaining one hundred thousand barrels was ever made. We are not prepared to infer from this fact that the city was bound to extend the contract beyond the fifty thousand barrels. The fact that the city, having first proposed for one hundred and fifty thousand barrels and accepting a contract for only fifty thousand barrels, the inference, we think, is reasonable that the city, by its silence, intended to reject the contract as to the surplus. At all events, the conclusion seems as strong as would be the opposite one, that the failure to reject implied an intention to accept. If it were merely a matter of doubt, the construction should be in favor of the city.

There is a large amount of oral testimony offered to show the damages alleged to have been sustained by the plaintiff. An impression, it seems, is aimed to be made, both by the tenor of the plaintiff's own testimony and by his counsel's brief, that the plaintiff was compelled by the rigid course alleged to have been pursued against the plaintiff by a powerful corporation, to accept, through his personal necessities, the paper of the city instead of money, as the plaintiff says, the contract calls for. The evidence does not induce us to think there was any failure to comply with the contract on the part of the city. We think it is fairly to be inferred that the plaintiff was informed that cash in hand was not to be expected. The plaintiff on the nineteenth of July, 1870, ten days before the contract was signed before the notary, wrote to the Administrator of Improvements as follows:

"To J. R. West, Administrator of Improvements—Sir: I hereby agree to accept in payment for one hundred and fifty thousand barrels of shells to be delivered to the city of New Orleans, as per acceptance

'of my bid by the Council this day, bonds of the city of New Orleans payable ten years after date with interest at the rate of seven and three-tenths per cent. per annum, at the rate of ninety cents on the dollar. It being understood as part of and essential to this agreement that the city shall provide by ordinance for the issue of such bonds, and shall set apart from the receipts of wharfage and levee dues a sufficient sum annually to pay the interest and extinguish the principal of the same within ten years from the date of their issue.

"Q. A. THOMAS.

"New Orleans, July 19, 1870."

It is shown by various receipts in the record that the plaintiff from time to time received what were termed " convertible certificates," in which it was stated that the receipts were redeemable in cash on or before the first February, 1871, or in bonds of the city to be issued as described in the certificate. These bonds draw seven and three-tenths per cent. interest.

The contract by notarial act contains this clause : "Payments to be made in cash, or certificates issued by the City Surveyor, approved by the Administrator of Improvements, on the acceptance and measurement of each ten thousand barrels or more barrels." The plaintiff received the " convertible certificates" for large amounts and sold them in the market for whatever he could get for them, and his transferrees, it would appear, obtained the seven three-tenth per cent. bonds for them.

The damages claimed are for the most part of the speculative kind and not recoverable. We do not find the city was in default, and consequently it is not liable in damages.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that there be judgment in favor of the defendant, the plaintiff and appellee paying costs in both courts.

---

## On Rehearing.

Ludeling, C. J.   A re-examination of the facts and the law satisfies us that there was no error in the original opinion rendered in this case.

It is true that, under a resolution of the City Council of the tenth of June, 1870, proposals for furnishing one hundred and fifty thousand barrels of shells were invited. This invitation for bids was subject to the condition that the city could reject all bids. As Thomas' bid was the lowest, the Administrator of Improvements advised that a contract be adjudicated to him for fifty thousand barrels, with a right reserved to the city to accept or reject the remaining one hundred thousand barrels within sixty days. The City Council adopted the suggestion.

The city thus modified the contract. The resolution of the twenty-sixth of July, 1870, adjudicated a contract to Thomas for fifty thousand barrels of shells, and this is the only adjudication or contract between the parties. It is said that the city could not modify the contract without Thomas' consent. The city had the right to reject the bid *in toto*, or she might propose a modification of the contract bid for by the plaintiff, and, of course, such modified contract would only be binding on Thomas if he assented to it. This he did in the notarial act signed by him. And the term *cash* used in the notarial act is explained by the letter of the plaintiff, written ten days before the contract was made, to the Administrator of Improvements—that is, money, or bonds of the city at ninety cents on the dollar. This interpretation of the contract appears to have been put upon the contract by the plaintiff himself, by taking convertible certificates for said bonds in payment for shells delivered under the contract.

We think the city has not been in default. We therefore adhere to the decree hitherto made in this case.